# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**SARIAH M. ROYAL**,

    Plaintiff,

v.

**JPMORGAN CHASE BANK, N.A.**,

    Defendant.

**CIVIL ACTION**
**FILE NO. 4:22-cv-00250-WMR**

## DEFENDANT JPMORGAN CHASE BANK, N.A.'S
## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.  FACTS AND PROCEDURAL HISTORY ........................................................3

  A.   The Disputed Transactions ...................................................3
  B.   Investigations into the Dispute ...........................................4

      1.   The First Dispute—$4,183.00 ........................................5
      2.   The Second Dispute—$8,535.00 ....................................6
      3.   The Third Dispute—$9,875.00 ......................................6
      4.   The Fourth Dispute—$12,517.91 ..................................7

  C.   Plaintiff's Attempts to Reopen the Disputes .......................8
  D.   Filing of the Complaint .......................................................9

III. STANDARD OF REVIEW ......................................................................10

IV.  ARGUMENT AND CITATION OF AUTHORITY .....................................11

  A.   Chase is entitled to summary judgment on Plaintiff's claims
       under EFTA. .........................................................................11

      1.   Plaintiff cannot demonstrate that Chase failed to
           implement the proper error resolution procedures...................12

  B.   Plaintiff cannot demonstrate that she is entitled to treble
       damages. ..............................................................................19

      1.   Plaintiff cannot demonstrate that Chase failed to comply
           with EFTA's requirements for issuance of a provisional
           credit and that Chase did not conduct a good faith
           investigation into the dispute. .................................................19

          a.   Chase complied with EFTA's requirements to
               issue a provisional credit. .............................................20
          b.   Chase conducted a good faith investigation and
               had a reasonable basis for concluding the account
               was not in error. .............................................................22

      2.   Plaintiff cannot establish that Chase willfully and
           knowingly concluded that her Account was not in error. .........23

V.    CONCLUSION.................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almon v. Conduent Bus. Servs.*,
No. 1:19-CV-0746-LMM, 2019 U.S. Dist. LEXIS 244464 (N.D.
Ga. Aug. 9, 2019)..............................................................................................15, 16

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986)..........................................................................................11

*Brown v. Crawford*,
906 F.2d 667 (11th Cir. 1990) .........................................................................11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..........................................................................................10

*Houston v. Fifth Third Bank*,
No. 18-cv-5981, 2019 U.S. Dist. LEXIS 40979 (N.D. Ill. Mar. 14,
2019) ..................................................................................................................23

*Jones v. Isuzu Motors Ltd.*,
210 F. Supp. 2d 1373 (M.D. Ga. 2002) ...........................................................10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..........................................................................................11

*Merisier v. Bank of Am., N.A.*,
688 F.3d 1203 (11th Cir. 2012) ..................................................................12, 13

*Mountcastle v. Suntrust Bank*,
No. MJG-12-0885, 2013 U.S. Dist. LEXIS 21040 (D. Md. Feb. 12,
2013) ..................................................................................................................23

*Nero v. Uphold HQ Inc.*,
2023 U.S. Dist. LEXIS 149562 (S.D.N.Y. Aug. 23, 2023).............................20

*Packer v. Lamour*,
No. 21-10022, 2022 U.S. App. LEXIS 11829 (11th Cir. May 2,
2022) ..................................................................................................................11

*Rallis v. First Gulf Bank, N. A.*,
    No. 3:08cv102/MCR, 2008 U.S. Dist. LEXIS 90327 (N.D. Fla.
    Oct. 24, 2008) ...........................................................................12

*Thurmon v. Ga. Pac., LLC*,
    650 Fed. App'x. 752 (11th Cir. 2016) ............................................10

*Tristan v. Bank of America*,
    No. SA CV 22-01183-DOC-ADS, 2023 U.S. Dist. LEXIS 111961,
    at *30 (C.D. Cal. June 28, 2023) ..................................15, 16, 17, 24

*Vertus v. CitiBank, N.A.*,
    No. 12-cv-80975, 2013 U.S. Dist. LEXIS 191820, at *9-10 (S.D.
    Fla. Apr. 12, 2013) ................................................................15, 17

**Statutes**

15 U.S.C. § 1693 ...........................................................................11

15 U.S.C. § 1693(b) .......................................................................12

15 U.S.C. § 1693f ..........................................................................12

15 U.S.C. § 1693f(a) ......................................................................13

15 U.S.C. § 1693f(a)-(c) ................................................................20

15 U.S.C. § 1693f(c) ......................................................................20

15 U.S.C. § 1693f(e) ............................................................10, 19, 23

15 U.S.C. § 1693g ..........................................................................12

15 U.S.C. § 1693h ..........................................................................12

**Other Authorities**

12 C.F.R. § 1005, *et seq.* ..............................................................12

12 C.F.R. § 1005.10(e).....................................................................21

12 C.F.R. § 1005.11(c).....................................................................13

12 C.F.R. § 1005.11(c)(4)............................................................14, 15

Fed. R. Civ. P. 56 ................................................................................1, 10

Fed. R. Civ. P. 56(e)................................................................................11

Defendant JPMorgan Chase Bank, N.A. ("Chase") hereby submits this brief, pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, in support of its *Motion for Summary Judgment* of the Complaint filed by Plaintiff Sariah M. Royal ("Plaintiff").

## I.   INTRODUCTION

By way of this lawsuit, Plaintiff seeks redress under the Electronic Funds Transfer Act ("EFTA") quite simply because she disagrees with Chase's ultimate denial of her several claims.  However, the unrefuted facts are clear that Chase conducted a reasonable investigation on four separate claims,[1] as required by law, and reported the results of its multiple investigations in a timely manner.  As a result, Chase undeniably complied with both the letter and spirit of EFTA as a matter of law, and this Motion should be granted.

On January 22, 2022, Plaintiff (or her mother) called Chase four times to dispute several transactions totaling $35,113.00 on Plaintiff's bank accounts.  With each call, however, the story and the facts changed.  Plaintiff cycled through various stories, hoping that something, *anything*, would stick such that she could void certain transactions on her Chase accounts.  Recognizing the inconsistencies in Plaintiff's statements and factors present on her account indicating that *Plaintiff herself* had

---

[1]     Despite seeking redress for the total amount of alleged unauthorized transaction disputed in each of these four phone calls, the Complaint only contains one claim for a violation of EFTA.  *See* Compl. ¶¶ 20-31.  For purposes of this Motion, each of these disputes is addressed separately on the basis of each of Plaintiff's reports.

authorized or initiated these transactions, Chase rejected Plaintiff's attempts to obtain reimbursement and notified her of its decision within ten business days of each of her reports.

Unsatisfied with this result, weeks later on February 8, 2022, Plaintiff, equipped with yet another tale, sought to reopen the dispute without providing any new documentation or information to support her allegations—a pattern that continued throughout this litigation. Again, Chase denied her claim, concluding the transactions were not in error, based on these five factors:

- *First,* the transfers were conducted using the same device as had previously logged into Plaintiff's Chase account and conducted other transactions.
- *Second*, Plaintiff utilized her facial identification to access to her Chase banking application seconds before the transactions were made.
- *Third,* that IP address was used to conduct these transactions near where Plaintiff lived and frequently used that device.
- *Fourth*, Plaintiff had previously conducted transactions to one of the same recipients—transactions that she had not and continues not to dispute.
- *Fifth,* no triggers indicating that Plaintiff's phone had been fraudulently accessed were present, as there were no contact information updates, no passwords changes, and no log-in failures.

Despite the overwhelming evidence indicating that Plaintiff had performed each of the disputed transactions on her own device and to a known party, Plaintiff maintains Chase violated EFTA by failing to implement error resolution procedures

in response to her four disputes and subsequent reassertion, such that she claims entitlement to receive treble damages.

However, as detailed below, Plaintiff's claims under EFTA fail as a matter of both fact and law.  The undisputed facts establish that Chase did implement those procedures required under EFTA by investigating each dispute, determining whether the transactions were in error, and informing Plaintiff of its results in a timely manner.  As Chase complied with its obligations under EFTA, Plaintiff cannot establish that she is entitled to treble damages, let alone prove facts that would support such an award.

Ultimately, Plaintiff cannot conflate Chase's obligations under EFTA with her ability to obtain her intended outcome.  Accordingly, Chase respectfully requests summary judgment be entered in its favor, and Plaintiff's Complaint be dismissed in its entirety.

## II.     FACTS AND PROCEDURAL HISTORY

### A.     <u>The Disputed Transactions</u>

On or around January 22, 2022, Plaintiff (and/or her mother, Tiffany Smith) made the first of several calls that day to Chase to report a series of disputed transactions on her account ending in 2592.[2]  *See* Statement of Undisputed Material

---

[2]     The two accounts relevant to this dispute are a college checking account, ending in 2592 ("Checking Account"), and a savings account, ending in 3900 ("Savings Account").  *See* SUMF ¶ 1.

Fact ("SUMF") ¶ 2.  During this initial call, Plaintiff's mother informed Chase that Plaintiff lost her card, and that she had first noticed that the card had gone missing on December 6, 2021—i.e., 1 month, 2 weeks, and 2 days before the initial call.  *Id.* ¶ 3.  Tiffany claimed the last transaction Plaintiff had made was on December 6, 2021, suggesting that two transactions made after that on December 31, 2021 and January 3, 2022—totaling $4,183.00—were not initiated by Plaintiff.  *Id.* ¶ 4-5.

Later that day, Plaintiff's mother placed a second call to Chase to dispute seventeen more transactions, totaling $8,535.00.  *Id.* ¶¶ 6-7.  But during this call, she now claimed that the last time Plaintiff used the card was **<u>not</u>** December 6, 2021, ***as she had indicated a few hours before***, but on December 22, 2021.  *Id.* ¶ 8.

That same day, Tiffany called Chase a third time to dispute additional transactions made via Apple Cash, totaling $9,875.00.  *Id.* ¶¶ 9-10.  Plaintiff's mother made one final, fourth call to dispute fourteen "QuickPay" transactions initiated via Zelle,[3] totaling $12,517.91.  *Id.* ¶ 11-12.  In these later reports, Tiffany claimed Plaintiff had not initiated the mobile transactions.  *Id.* ¶ 13.

### B.   <u>Investigations into the Dispute</u>

In response to the several disputes reported by Plaintiff in response to each of her four calls, Chase investigated the transactions at issue.  *Id.* ¶ 15.  Investigated as

---

[3]   QuickPay and Zelle are both online payment service providers that allow consumers to complete mobile transactions.

four separate claims—one for each of the four calls that Plaintiff's mother had made on January 22, 2022—Plaintiff received notice of each determination as Chase concluded the respective investigations.  *Id.* ¶¶ 15, 19, 23, 27, 36.

### 1.    The First Dispute—$4,183.00

Chase investigated the two transactions, totaling $4,183.00 (the "First Dispute").  *Id.* ¶ 16.  After its investigation concluded, Chase found the transactions to not be in error based on the following evidence.  <u>First</u>, Plaintiff—despite representing she had lost her card—had not disputed all card transactions performed after December 6, 2021, the date she claimed to have last used her card, and January 22, 2022, the date she was making the report.  *Id.* ¶ 16.  <u>Second</u>, in response to Chase's software, which provided Plaintiff with a text message and email alert and initially blocked the transactions until Plaintiff confirmed their validity, Plaintiff confirmed the transactions were valid.  *Id.*  <u>Third</u>, the phone number utilized to confirm these transactions matched Plaintiff's phone number on file.  *Id.*  <u>Fourth</u>, although Plaintiff disputed certain transactions, she did not dispute the transfers from her Savings Account to her Checking Account utilized to fund the disputed activity.  *Id.*  And <u>fifth</u>, after review of Plaintiff's prior transaction history, Chase found Plaintiff had previously repeated the same pattern of initiating online transfers from her Savings Account to effectuate transactions made from her Checking Account.

*Id.* ¶ 17.  On January 24, 2022, Chase concluded its investigation of the First Dispute and mailed Plaintiff notice of the same.  *Id.* ¶¶ 18-19.

### 2. *The Second Dispute—$8,535.00*

Chase then investigated the seventeen disputed transactions totaling $8,535.00 (the "Second Dispute").  As part of the investigation, Chase reviewed Plaintiff's prior inconsistent statements from the First Dispute regarding her alleged lost card, observing that Plaintiff had initially claimed her last valid charge had occurred on December 6, 2021, but she then later stated that the last time she had used her card was on December 22, 2021.  *Id.* ¶¶ 4, 8, 21.  And, much like in the First Dispute, Plaintiff failed to dispute as unauthorized the Savings Account to Checking Account transfers that funded the transactions at issue.  *Id.* ¶ 21.  As a result, Chase concluded the transactions were not in error, completing its investigation into the Second Dispute on January 26, 2022.  *Id.* ¶ 22.  Chase then notified Plaintiff of the same via written correspondence.  *Id.* ¶ 23.

### 3. *The Third Dispute—$9,875.00*

On January 25, 2022, Chase completed its investigation into the transactions totaling $9,875.00 (the "Third Dispute").  *Id.* ¶¶ 26, 27.  Chase found that although Plaintiff had disputed the transaction itself, she had failed to dispute the Savings Account to Checking Account transfer funding the transactions.  *Id.* ¶ 25.  Moreover, when sent text message and email alerts, Plaintiff did not deny the validity of the

transactions.  *Id.*  Based on these factors, Chase concluded that the transactions underlying the Third Dispute were not in error and mailed correspondence on January 25, 2022 to Plaintiff indicating the same.  *Id.* ¶¶ 26-27.

### 4.    The Fourth Dispute—$12,517.91

And, last, Chase investigated the fourteen QuickPay transactions totaling $12,517.91 (the "Fourth Dispute").  *Id.* ¶ 28.  To start its investigation, Chase reviewed historical use of Plaintiff's online profile.  *Id.* ¶¶ 29-30.  Based on that review, no indication was found that Plaintiff's profile had been fraudulently accessed for a variety of reasons.  *Id.* ¶¶ 29-34.  For example, there were no new added devices. *Id.* ¶ 29.  The device IP Address and service provider used to conduct the QuickPay transactions aligned with Plaintiff's previous login history.  *Id.* ¶ 30. There were no login failures, nor were there any attempts to change Plaintiff's password.  *Id.* ¶ 29.  The IP address was in the same geographic area as Plaintiff's prior transactions.  *Id.* ¶ 30.  Additionally, when evaluating certain other identifiers, Chase found that: (i) Plaintiff had utilized facial identification software to access the application; (ii) Plaintiff had previously authorized QuickPay transactions to one of the same recipients that Plaintiff had not disputed;[4] and (iii) that Plaintiff had

_____

[4]     For example, one of the transactions that Plaintiff disputed was a Zelle payment to "MA," initiated on December 13, 2021.  *See* SUMF ¶ 33.  However, in the six months prior to this transaction, Plaintiff had authorized six Zelle transactions to the same recipient and made no complaints of those transactions during any of her communications to Chase.  *See id.* at ¶ 34.

previously utilized Zelle to initiate transfers.   *Id.* ¶ 31-34.   Therefore, Chase

concluded its investigation into the Fourth Dispute on January 31, 2022, concluding

that the transactions were not in error.  *Id.* ¶¶ 35-36.  Chase then provided Plaintiff

with notice of the denial via written correspondence.  *Id.*

###   C.   <u>Plaintiff's Attempts to Reopen the Disputes</u>

Realizing her initial disputes failed to yield her intended results, on February

8, 2022, Plaintiff called Chase again intending to reopen her previous claims.  *Id.* ¶

37.  But now Plaintiff's version of events included a new claim that her phone had

allegedly been hacked—abandoning her prior representations that her daughter's

card had been lost.  *Id.* ¶ 38.  Although Plaintiff did not provide Chase with any new

additional information to support her claim, Chase—intending to investigate the

veracity of such allegations—reopened Plaintiff's claim and conducted another

investigation into all transactions underlying the previous four disputes.  *Id.* ¶¶ 39-

40 (citing Ex. 8, Plf's Resp. to Defs. First Requests for Production).

Again, examining the four disputes detailed above, Chase concluded the

transactions were not in error, based on the following five factors.  *Id.* ¶¶ 41-44.

First, the geographic area of the IP address used to initiate the transfers matched the

Plaintiff's geographic area.  *Id.* ¶ 41.  Second, Plaintiff previously logged into the

Chase online banking platform utilizing the same device identification. *Id.*  Third,

Plaintiff previously made transactions utilizing the same device identification.  *Id.*

Fourth, Plaintiff previously conducted a transaction to one of the same recipients—a transaction she had not (and continues to have not) disputed. *Id.* Fifth, no triggers indicating Plaintiff's phone was fraudulently accessed were present, as there were no contact information updates, no passwords had been changed, and no log-in failures occurred. *Id.* ¶ 42. Rather, Plaintiff utilized her facial identification to log in to her Chase banking application prior to initiating the transfers. *Id.* ¶ 43.

For these reasons, Chase—for the fifth time—concluded that Plaintiff's transactions were not in error and informed her of the same on February 25, 2022. *Id.* ¶¶ 44-45.

### D.   <u>Filing of the Complaint</u>

Unsatisfied with the results of Chase's *five* investigations into her dispute, Plaintiff filed this action on November 8, 2022. *Id.* ¶ 46. The Complaint sets forth one cause of action for violating EFTA and its implementing regulations, seeking to recover based upon Plaintiff's four prior disputes. *See* Compl. ¶¶ 21-31. Plaintiff contends that Chase violated EFTA by: (1) failing to "implement[] the proper error resolution procedures"; (2) "fail[ing] to provide provisional credit to Plaintiff's accounts relating to any error investigations that could not be resolved within ten (10) business days"; (3) "fail[ing] to conduct  good faith investigations into . . . Plaintiff['s] report[]"; (4) "fail[ing] to provide Plaintiff reasonable access to Chase customer service"; and (5) "knowingly and willfully conclud[ing] that Plaintiff's

accounts were not in error."  *See* Compl. ¶¶ 22-25.  On this basis, Plaintiff seeks: "(a) actual damages; (b) restitution of all liability in excess of $500 each; (c) statutory damages; (d) treble damages pursuant to 15 U.S.C. 1693f(e); (e) incidental and consequential damages . . .  and (f) an injunction barring Chase from continuing Federal law."  Compl. ¶ 31.[5]

## III.   STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Thurmon v. Ga. Pac., LLC*, 650 Fed. App'x. 752, 756 (11th Cir. 2016); Fed. R. Civ. P. 56.  While justifiable inferences are to be drawn in favor of the non-moving party, the moving party is entitled to judgment as a matter of law when the non-moving party fails to establish an essential element of the case.  *Id.* Summary judgment is an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Jones v. Isuzu Motors Ltd.*, 210 F. Supp. 2d 1373, 1376 (M.D. Ga. 2002).

Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action on which the non-movant will be unable to establish a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[5]     The Complaint was initially filed by Plaintiff's prior counsel, Joseph W. Weeks.  However, on September 25, 2023, this Court granted Mr. Weeks' Motion to Withdraw as Counsel.  *See* Doc. 17.

323 (1986).  The burden then shifts to the non-movant to come "forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-movant's bare assertions, standing alone, are not enough to create a material issue of fact and defeat a motion for summary judgment.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986).  And critically, "[t]he nonmoving party may not rely solely on the pleadings to defeat a motion for summary judgment, but rather must rely on affidavits, depositions, answers to interrogatories, and admissions to show that there are specific facts demonstrating that there is a genuine issue for trial."  *Packer v. Lamour*, No. 21-10022, 2022 U.S. App. LEXIS 11829, at *2 (11th Cir. May 2, 2022) (citing *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990)).

Under these standards, summary judgment in favor of Chase is appropriate on all claims.

## IV.   ARGUMENT AND CITATION OF AUTHORITY

### A.   <u>Chase is entitled to summary judgment on Plaintiff's claims under EFTA.</u>

EFTA was enacted "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems."  15 U.S.C. § 1693.  EFTA's "primary objective . . . is the provision of individual consumer rights with respect to electronic fund transfers"; this

objective is promoted by establishing procedures for error resolution and assigning and limiting the liability of both consumers and financial institutions. *Rallis v. First Gulf Bank, N. A.*, No. 3:08cv102/MCR, 2008 U.S. Dist. LEXIS 90327, at *7 (N.D. Fla. Oct. 24, 2008) (citing 15 U.S.C. §§ 1693(b), 1693f, 1693g, 1693h).  This basic framework has been further codified in EFTA's implementing regulations enacted by the Consumer Financial Protection Bureau, referred to as Regulation E.  *See* 12 C.F.R. § 1005, *et seq.*

Plaintiff alleges Chase violated EFTA through its failure to initiate the proper error resolution procedures upon receipt of her dispute.  As demonstrated below, Plaintiff cannot establish the veracity of these allegations and may not rely on her baseless legal conclusions for support.  Rather, the uncontroverted facts prove Chase complied with each of its obligations under EFTA.  Accordingly, summary judgment should be granted in Chase's favor.

### 1. *Plaintiff cannot demonstrate that Chase failed to implement the proper error resolution procedures.*

Chase complied with its obligations under EFTA by properly investigating the disputed transactions to determine whether an error had occurred.

Following receipt of an alleged error, "EFTA . . . requires banks to follow one of two paths in response . . . : (1) to investigate and correct the error if an unauthorized transfer has occurred, or (2) to investigate and inform the customer that no error occurred if the transfer was authorized by the customer."  *Merisier v. Bank*

*of Am., N.A.*, 688 F.3d 1203, 1209 (11th Cir. 2012).  Simply put, to maintain compliance with EFTA, Chase needed only to properly "investigate[] the alleged error, determine[] whether an error had occurred, and mail[] the result of such investigation and determination to [Plaintiff]."  *Merisier*, 688 F.3d at 1211 n.10; *see also* 15 U.S.C. § 1693f(a) (where a financial institution receives notice of error, "the financial institution shall investigate the alleged error, determine whether an error has occurred and report or mail the results of such investigation and determination to the customer"); 12 C.F.R. § 1005.11(c), Comment 11(c)(7) (as to the "[e]xtent of [the] required investigation," a "financial institution complies with its duty to investigate, correct, and report its determination regarding an error . . . by transmitting the requested information, clarification, or documentation within the time limits.").

Chase did just that here.  <u>First</u>, Chase unequivocally investigated the alleged error within the statutory time limitations.  As to the First Dispute, totaling $4,183.00, Chase completed its investigation on January 24, 2022.  Chase then notified Plaintiff of this denial—***only one business day*** after Plaintiff's report on January 22, 2022.  *See* SUMF ¶¶ 18-19 (citing Ex. 1, Affidavit of Kevin Kesterson *and* Ex. 3, 1/24/22 Letter to S. Royal).  For the Second Dispute, totaling $8,535.00, Chase completed its investigation on January 26, 2022, and notified Plaintiff of the same—***three business days*** after Plaintiff's report on January 22, 2022.  *Id.* ¶¶ 22-

23 (citing Ex. 1, Affidavit of Kevin Kesterson *and* Ex. 4, 1/26/22 Letter to S. Royal).

Similarly, for the Third Dispute, totaling $9,875.00, Chase completed its investigation on January 25, 2022, and again, notified Plaintiff of its results—here, ***two business days*** after Plaintiff's report on January 22, 2022.  *Id.* ¶¶ 26-27 (citing Ex. 1, Affidavit of Kevin Kesterson *and* Ex. 7, 1/25/22 Letter to S. Royal).  And, for the Fourth Dispute, totaling $12,517.91, Chase concluded its investigation on January 31, 2022, and provided Plaintiff with notice of the denial—***six business days*** after the report on January 22, 2022.  *Id.* ¶¶ 35-36 (citing Ex. 1, Affidavit of Kevin Kesterson *and* Ex. 5, 1/31/22 Letter to S. Royal).

Second, Chase conducted a reasonable investigation into the four disputes and subsequent reassertion.  In assessing the extent to which a financial institution must conduct an investigation into a disputed transaction, EFTA advises that "a financial institution's review of its own records regarding an alleged error [can] satisf[y] [EFTA's] requirements." 12 C.F.R. § 1005.11(c)(4).  The Consumer Financial Protection Bureau's official interpretation of this provision states that the following information may be reviewed as part of a good faith investigation: (1) the transaction history of the particular account for a reasonable period time immediately preceding the allegation of error; (2) the ACH transaction records for the transfer; (3) the location of either the transaction or the payee in question relative to the consumer's place of residence and habitual transaction area, or (4) any other information

appropriate to resolve the claim.  *See* 12 C.F.R. § 1005.11(c)(4), Comment 11(c)(4)-(5).

For example, in *Vertus v. CitiBank, N.A.,* the District Court for the Southern District of Florida found CitiBank "conducted an investigation in good faith" as the bank reviewed the plaintiff's use of identifying information to place the transactions, conducted a questionnaire with plaintiff to ascertain facts relevant to the dispute, and "examined each of the said withdrawals individually to determine whether they were authorized based on the time, place, and manner in which they were made."  *See* No. 12-cv-80975, 2013 U.S. Dist. LEXIS 191820, at \*9-10 (S.D. Fla. Apr. 12, 2013); *contrast Almon v. Conduent Bus. Servs.*, No. 1:19-CV-0746-LMM, 2019 U.S. Dist. LEXIS 244464, at \*19 (N.D. Ga. Aug. 9, 2019) (finding that bank did not have a good-faith basis for concluding transactions were not in error when it ignored geographic evidence indicating the transactions were initiated elsewhere).

Similarly, in *Tristan v. Bank of America*, the District Court for the Central District of California dismissed the plaintiff's claim, finding that the bank had satisfied its investigative obligations under EFTA.  *See* No. SA CV 22-01183-DOC-ADS, 2023 U.S. Dist. LEXIS 111961, at \*30 (C.D. Cal. June 28, 2023).  There, rather than "limit[ing] its investigation solely to the relevant payment instructions[,]" the bank's investigation revealed that "the transaction was completed using a device that [wa]s consistent with previous valid account activity"; the disputed transaction

"was validated using an authentication code sent to a valid phone number belonging to a signer on the account"; and that the transaction "was confirmed . . . via (SMS/MMS) text message response." *Id.* at *29-30.

Here, in compliance with its obligations under EFTA, Chase conducted a good faith investigation—like those conducted in *Vertus* and *Tristan*—into Plaintiff's dispute. Particularly, in each of the investigations, Chase reviewed its records to evaluate the disputed transactions, assessing: (i) Plaintiff's use of facial and other identification methods in the transactions; (ii) the consistency of the geographic location of the IP address as compared to Plaintiff's previous transactions; (iii) statements provided by Plaintiff when reporting the dispute; (iv) Plaintiff's transaction history; and (v) potential triggering events in Plaintiff's mobile banking application, such as alterations to Plaintiff's contact information or passwords. *See* SUMF ¶¶ 16-17, 21, 29-34, 41-43.

Initially, Chase examined the identification methods used to access Plaintiff's account to make these transactions and found the device identification aligned with Plaintiff's prior usage. *Id.* ¶¶ 30, 41. For example, Plaintiff previously logged into Chase's online banking platform on that same device *and* Plaintiff previously used that same device to make transactions. *Id.* ¶¶ 29, 41; *compare Tristan*, 2023 U.S. Dist. LEXIS 111961, at *30 (dismissing plaintiff's claim under EFTA where the disputed transaction was completed using a device consistent with previous account

activity).  Plaintiff utilized facial identification to log into this application just before the transactions.  *Id.* ¶¶ 32, 43.  And like the facts in *Tristan*, when Chase's system contacted Plaintiff via text and email messaging to validate the transaction, Plaintiff did not deny the validity.  *Id.* ¶¶ 16, 25.  *Accord* 2023 U.S. Dist. LEXIS 111961, at *30.

Next, as in *Vertus*, Chase looked to the consistency of the geographic location of the IP address as compared to Plaintiff's previous transactions and Plaintiff's transaction history.  Chase found that the geographic area of the IP address used to initiate the transfers was consistent with Plaintiff's geographic area—both in terms of the address on Plaintiff's account and Plaintiff's IP address used in prior transactions.  *Id.* ¶¶ 30, 41.  Chase also concluded Plaintiff previously conducted six transactions to one of the same recipients—transactions that she had not disputed— utilizing the same transfer application.  *Id.* ¶¶ 31-34.  And Plaintiff historically initiated online transfers from her Savings Account to effectuate transactions made from her Checking Account.  *Id.* ¶ 17.  *Compare Vertus*, 2013 U.S. Dist. LEXIS 191820, at *9-10 (finding the bank conducted a reasonable investigated where it examined "the time, place, and manner" in which each transaction was made).

Chase then examined statements provided by Plaintiff when reporting the four disputes and found that blatant inconsistencies throughout.  *Id.* ¶¶ 3-4, 8, 16, 21.  Not only did Plaintiff fail to dispute all card transactions performed after the date she

claimed to have last used her card, but she also first contended that she had lost her card and then later claimed that her phone had been hacked.  *Id.* ¶¶ 3, 13, 38.  And Plaintiff also provided two different dates—just hours apart—as to the last usage of her card.  *Compare id.* ¶¶ 3-4 (detailing statement from Plaintiff that she last used her card on December 6, 2021) *with id.* ¶ 8 (detailing second statement from Plaintiff that she last used her card on December 22, 2021).

Finally, Chase examined whether any potential triggering events occurred in Plaintiff's mobile banking application and concluded there were no contact information updates, no passwords changes, and no log-in failures.  *Id.* ¶ 42.

Following its evaluation of the evidence as described above, Chase made its determination as to whether an error had occurred—finding that the transactions were initiated by Plaintiff and were thus authorized.  Accordingly, it is clear that Chase conducted a reasonable investigation—similar to those in *Vertus* and *Tristan*—into the disputed transactions prior to reaching its determination.

Third, in both January 2022, following Plaintiff's initial report, and in February 2022, following Plaintiff's reassertion of her dispute, Chase notified Plaintiff through written correspondence explaining it found the transactions were authorized and noting its research into the dispute was available upon request.  *See* SUMF ¶¶ 19, 23, 27, 36, 45.

Under these facts, specifically in evaluating Plaintiff's disputed charges, Chase complied with its error resolution obligations under EFTA.

**B.     Plaintiff cannot demonstrate that she is entitled to treble damages.**

EFTA provides that a Plaintiff may recover treble damages in two circumstances:

(1)     the financial institution ***did not provisionally recredit a consumer's account*** within the ten-day period specified in subsection (c), and the financial institution (A) ***did not make a good faith investigation of the alleged error***, or (B) ***did not have a reasonable basis*** for believing that the consumer's account was not in error; or

(2)     the financial institution ***knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence*** available to the financial institution at the time of its investigation.

*See* 15 U.S.C. § 1693f(e) (emphasis added).

As detailed below, even if Plaintiff could prevail on her EFTA claim, Plaintiff cannot establish treble damages are recoverable.  The uncontroverted facts establish Chase complied with the requirements for provisionally recrediting her account and that Chase made a good faith investigation into the alleged error.  Thus, Chase had a reasonable basis for believing that Plaintiff's account was not in error.  Alternatively, Plaintiff cannot establish that Chase knowingly and willfully concluded that the consumer's account was not in error.

       ***1.     Plaintiff cannot demonstrate that Chase failed to comply with EFTA's requirements for issuance of a provisional credit and***

*that Chase did not conduct a good faith investigation into the dispute.*

### a.  Chase complied with EFTA's requirements to issue a provisional credit.

Section 1693f(c) of EFTA provides a financial institution with two options for issuing a provisional credit amid its implementation of error resolution procedures. First, in in lieu of providing a provisional credit, the financial institution may perform its investigation and mail the consumer the findings of that investigation **within ten business days** of being notified of unauthorized transfers.  *See* 15 U.S.C. § 1693f(c).  Alternatively, EFTA provides financial institutions with "the option of providing consumers with a provisional credit to their accounts while the institution conducts investigations of reported 'errors.'"  *Nero v. Uphold HQ Inc.*, 2023 U.S. Dist. LEXIS 149562, at *27 (S.D.N.Y. Aug. 23, 2023).  Thus, rather than completing its investigation within ten days without issuance of a provisional credit, "the institution may, within ten business days, provisionally credit the consumer's account in the amount of the alleged error pending the conclusion of its investigation, provided that the investigation is concluded within forty-five days."  *Id*.; *see also* 15 U.S.C. § 1693f(a)-(c).

Plaintiff alleges Chase violated its obligations under EFTA, "because [Chase] fail[ed] to provide provisional credit to Plaintiff's accounts relating to any error investigations that could not be resolved within ten (10) business days."  *See, e.g.,*

Compl. ¶ 23.  But this allegation cannot withstand this Motion when confronted by the facts.   As described in Section IV.A(1) *supra*, Chase completed its four investigations into Plaintiff's alleged errors within ten business days.  *See* SUMF ¶¶ 18-19, 22-23, 26-27, 35-36.   Thus, rather than being required to provide four provisional credits, Chase opted to conclude its investigations into Plaintiff's disputed transactions within ten business days.  Chase was, therefore, not required to provide a provisional credit to Plaintiff under EFTA.

Additionally, to the extent, Plaintiff tries to allege Chase was required to provide her with a provisional credit following her reassertion of the dispute—such an argument would fail as a matter of law.  As Regulation E make plain: "[a] financial institution that has fully complied with the error resolution requirements has no further responsibilities . . . should the consumer later reassert the same error." 12 C.F.R. § 1005.10(e).  Although, here, Plaintiff reasserted her dispute, Chase was not required to provide provisional credit while it conducted a second investigation of the transactions.  *Id*.

Ultimately, Chase was not required to provide Plaintiff with a provisional credit under the express terms of EFTA; therefore, even if Plaintiff could proffer any evidence to support that Chase did not conduct a good faith investigation or that Chase did not have a reasonable basis to conclude the account was not in error, Plaintiff still would be precluded from recovering treble damages.

**b.    Chase conducted a good faith investigation and had a reasonable basis for concluding the account was not in error.**

As detailed in Section IV.A(1) *supra*, the facts clearly demonstrate that Chase conducted a good faith investigation, assessing: (i) Plaintiff's use of facial and other identification methods in the transactions; (ii) the consistency of the geographic location of the IP address as compared to Plaintiff's previous transactions; (iii) statements provided by Plaintiff when reporting the dispute; (iv) Plaintiff's transaction history; and (v) potential triggering events in Plaintiff's mobile banking application, such as alterations to Plaintiff's contact information or passwords. *See* SUMF ¶¶ 16-17, 21, 29-34, 41-43.

In any event, despite the steps taken by Chase, Plaintiff alleges that "Chase . . . failed to conduct good faith investigations into the unauthorized transactions . . . by . . . failing to provide Plaintiff reasonable access to Chase customer service and by failing to provide Plaintiff with meaningful assistance when she was able to reach customer service." Compl. ¶ 24. The documents produced by Plaintiff contradict the allegation, as throughout the relevant time frame, Plaintiff made **<u>44 calls</u>** to Chase customer service with some of these calls lasting nearly ninety minutes. SUMF ¶ 14 (citing Ex. 2, Phone Call Logs of T. Smith). Each call provided Plaintiff with access to Chase's customer service representatives and each of these calls provided Plaintiff with the ability to report her dispute.

Accordingly, Chase complied with its obligations under EFTA—as dictated by Regulation E—to conduct a good faith investigation into Plaintiff's dispute, and thus had a reasonable basis for concluding Plaintiff's account was not in error.

### 2.    *Plaintiff cannot establish that Chase willfully and knowingly concluded that her Account was not in error.*

As an alternative to establishing that a financial institution failed to conduct a good-faith basis or did not have reasonable basis for concluding the account was an error, Plaintiff also seeks treble damages because Chase "knowingly and willfully concluded that [Plaintiff's] account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation."  15 U.S.C. § 1693f(e); *see also* Compl. ¶ 26.

Courts have dismissed claims for treble damages under EFTA where a plaintiff "does not allege details establishing any bad faith on [the defendant's] part or discuss the results of [the defendant's] investigation."  *Mountcastle v. Suntrust Bank*, No. MJG-12-0885, 2013 U.S. Dist. LEXIS 21040, at *10–12 (D. Md. Feb. 12, 2013); *Houston v. Fifth Third Bank*, No. 18-cv-5981, 2019 U.S. Dist. LEXIS 40979, at *10 (N.D. Ill. Mar. 14, 2019) (dismissing claim for treble damages because the allegations "remain far too speculative to raise the possibility of relief above the speculative level").

As elaborated in Section IV.B(1)(b) *supra*, Chase conducted a detailed investigation into the dispute in compliance with its obligations under EFTA.  At

best, Plaintiff can merely rely on the conclusory allegations contained in her Complaint, which simply restate the elements identified in Section 1693f.   But as the *Mountcastle* and *Houston* Courts held, speculative and conclusory allegations are insufficient to show that Chase acted "knowingly and willfully" in determining no error existed.   Plaintiff has not alleged any facts reflecting that Chase acted "knowingly and willfully."   Nor has Plaintiff identified any steps that Chase should have taken but did not, or any relevant information Chase failed to consider in examining her dispute.   *See, e.g.*, *Tristian*, 2023 U.S. Dist. LEXIS 111961, at *30 (dismissing plaintiff's claim under EFTA on this basis).   Thus, even if the Court does not dismiss the entirety of Plaintiff's EFTA claim, the Court should nonetheless dismiss Plaintiff's request for treble damages.

## V.   CONCLUSION

For these reasons, Chase asks this Court to enter summary judgment for Chase on all of Plaintiff's claims as set forth above.

Dated: October 20, 2023

/s/ Andrew Z. Smith
Andrew Z. Smith
Georgia Bar No. 945798
smithaz@gtlaw.com
**GREENBERG TRAURIG, LLP**
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Phone: 678-553-2100
Fax:   678-553-2212

24

*Counsel for Defendant*
*JPMorgan Chase Bank, N.A.*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D

I hereby certify that the foregoing document was prepared in Times New Roman, 14-point font, as provided by Local Rule 7.1D.

*/s/ Andrew Z. Smith*
Andrew Z. Smith

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record. Additionally, I hereby certify that on this date, I served true and correct copies of the foregoing on the following via U.S. certified mail:

Sariah M. Royal
83 Birch River Court
Dallas, Georgia 30312

Dated: October 20, 2023

*/s/ Andrew Z. Smith*
Andrew Z. Smith